# Burke *et al.* Appellants, *v.* Gray *et al.*

G. contracted with R. to sell the latter a lot of ground.  G. gave his bond for the title
  when the purchase money should be paid.  R. executed his notes, with A. as his
  indorser.  G. transferred one of the notes to B. who filed his bill in chancery to
  subject the lot to the payment of the purchase money, alleging the insolvency of R.
  and A.:  Held, the complainants had no equity.  There was no lien, inasmuch as
  the vendor took security.  The only way to subject the lot was by bill for specific
  performance.

APPEAL from the superior court of chancery.

The appellants filed their bill in the superior court of chancery,
which discloses these facts: In the year 1836 the defendant, Gray,
contracted to sell to the other defendant, Roberts, a lot of land in
Vicksburg.   For the purchase money, Roberts executed two pro-
missory notes, for the sum of three thousand two hundred and fifty
dollars each, payable to Thomas H. Goodall, who indorsed them.
Gray made no title, but gave a bond to make title on the payment
of the purchase money.   Gray afterwards indorsed one of these
notes to the appellants, who charge that Roberts and Goodall are
insolvent, and they pray to have the lot subjected to the payment
of the amount of their note, on the ground of a lien for the purchase
money.

Hurst, for appellants.

In this cause there is but one question, can the assignee of a note
given in part consideration of the purchase of land, to secure the
payment of which the vendor reserved the legal title in himself,
giving to the vendee a bond to convey upon the payment of the
purchase, by virtue of the assignment, have his debt satisfied out
of the land, by a decree of a court of chancery, there being no
assignment of the title bond.

Burke *et al.* Appellants, *v.* Gray *et al.*

In Kentucky, the assignee even after a conveyance of title to the vendee, is said to be vested with full authority against the sub-purchaser to enforce payment out of the land. 4 Litt. 289; 5 Mun. 287, 312. Such has also been the current of decisions in Virginia. But it is not at all necessary in this case to review these decisions; suffice it to say, that the chancellor in rendering his decree in this case erroneously placed it upon the same footing with the transfer of a vendor's lien by a simple assignment of the evidence of debt. In this view he was entirely mistaken: here the vendor reserves the title to himself, to secure the payment of the purchase money, which is, according to the supreme court of Tennessee, in the case of Graham *v.* McCampbell, equivalent to taking the legal title from the vendee for the same purpose. That case was in all respects the same as the one now presented to the court. It is not properly a lien upon the lot that we now seek to subject, but the enforcement of a contract, a quasi mortgage. The court in the case just cited, hold that there is no difference in the case presented and that of a mortgage; their reasoning seems conclusive. The question then is, is a transfer of the debt a transfer of the mortgage. That it is, see Burr. Rep. Martin *v.* Merolin, 979; Austin *v.* Barbank, 2 Day, 474; Green *v.* Hart, 1 John. 80. These cases clearly show that the assignee of the debt is entitled to the benefit of the security of the mortgage, and if no sensible distinction can be perceived between reserving and taking a legal title to secure the payment of the purchase money, then we have shown all that is necessary.

There may be a question made in this case, that Roberts was the purchaser, and the indorsement of Goodall was collateral security, to make the purchase money safe. If I was seeking to enforce a mere vendor's lien, this would be a fatal objection, but I think I have clearly shown the difference.

Mr. Chief Justice SHARKEY.

There is no foundation here for considering this case as presenting a vendor's lien for the purchase money, because Roberts received no title, but only a bond to make a title, and Gray also took security for the purchase money by the indorsement of Goodall. By subjecting Roberts's interest, which is but an equity, Gray's

Burke *et al.* Appellants, *v.* Gray *et al.*

legal right would not be affected, because, as between Gray and complainants, there can be no pretence of a lien. Their relation is that of indorser and indorsee, and the remedy is purely legal. Equity could not interfere to enforce a lien. Gray would have had none, even if he had made a title, because he took security, and there is none between the appellants. There is no way to subject the lot to the payment of this debt, except by bill for specific performance, in which case a decree might be made for the sale of the property in case Roberts refused to fulfil his engagement.

Decree of the chancellor affirmed.